# Thomas, to the use of Heebner, *versus* Moore.

1. In a question of partnership, evidence that the connection between alleged partners had been formed fraudulently and for the purpose of covering the property of one from his creditors, is not admissible.

2. B. sold part of a coal-lease with the personal property to M., who constituted O. his attorney ; orders drawn for goods by B. on a firm, "B. & Co.," in favor of the plaintiffs, accepted by O., and goods furnished accordingly, were evidence of partnership between B. and M.

3. B. when alone kept blank assignments which were filled up by him to the plaintiff, a storekeeper, for the amount due laborers of B., and the laborers received goods to the amount from the plaintiff. There being evidence of partnership between B. and M., such assignments dated afterwards were evidence in a suit against the firm.

March 8th 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county :* No. 239, to January Term 1871.

This case was commenced before a justice of the peace, by John Thomas, for the use of H. R. Heebner and brother, against John H. Bracken and William D. Moore. Judgment was rendered by the justice for the plaintiff : the defendant Moore appealed to the Court of Common Pleas. The declaration was in the common counts : the pleas were non assumpsit and payment with leave.

The claim was for labor by Thomas at the Charter Oak colliery,

[*Thomas v. Moore.*]

in which he alleged that Moore was a partner with Bracken. The question in the case was whether Moore was a partner.

The trial was December 20th 1870, before Ryon, P. J.

The plaintiff gave evidence by C. Marsh that he was clerk for Bracken at the colliery; that Thomas worked there; that Heebner and Brother kept a store, and when the workmen wanted an order for goods, they filled out assignments of their wages to Heebner, and gave to the men; witness said that the assignments which were shown to him, were such assignments as were given to Thomas for his labor in September and October 1867 : his instructions were from Bracken. Oscar F. Moore, brother of defendant, was frequently about colliery, defendant himself not before November 1867. Oscar received and sold coal. There was a firm of J. H. Bracken & Co.: it transacted business in Philadelphia. Witness had no knowledge of who composed the firm except from the books; found there only the names of J. H. Bracken and Oscar F. Moore. W. D. Moore was frequently about the colliery in the spring and summer of 1867.

Plaintiff then gave in evidence an assignment, dated February 11th 1867, from Bracken to Moore, the defendant, of one-third of his interest in lease for ten years, of the colliery, the whole of the lease having been vested in him, and "a third of all the personal property appertenant to and connected with and used in working said colliery," and an assignment dated November 1st 1867, to W. D. Moore, of his remaining two-thirds.

Francis Bannar testified that in August, September and October 1867, he had a negotiation with Moore for rolls for the colliery. Oscar also conversed with witness about them.

The plaintiff then called Moore, the defendant, and proposed to prove by him: 1. That on February 11th 1867, John H. Bracken was in failing circumstances and insolvent; that at the instance of Oscar F. Moore the witness was induced to take a transfer of one-third interest in the said colliery; that William D. Moore never paid any money for the transfer of said colliery, but that the arrangement between said Bracken and Oscar and William D. Moore, was that William D. Moore should cover up a one-third interest, and give to said Oscar F. Moore a power of attorney to manage the interest in said colliery assigned to said William D. Moore; that the profits of the colliery were to be covered by the said William D. Moore, till at a later period when William D. Moore was to take a transfer of the whole colliery; that during the time between the transfer of the one-third and the remaining two-thirds of the said colliery, said William D. Moore, through Oscar F. Moore, as his attorney, and pursuant to the aforesaid arrangement, took the management of said colliery along with John H. Bracken; that at the date of the assignment of the one-third interest there were large sums of money due by

[Thomas v. Moore.]

John H. Bracken for labor and materials, which remained a lien on said one-third interest, notwithstanding such sale; that said William D. Moore well knew this fact, and that he made no other provision for the payment of the same, except that they were to be paid by the future workings of said colliery.

The defendant objected to the offer.

" By the court: We admit any evidence tending to show a joint working of the colliery by Bracken and William D. Moore from February 1867, or at the time the debt in suit was contracted; but we exclude so much of the offer as relates to the covering up the property for the purpose of defrauding the creditors of Bracken."

The court sealed a bill of exceptions to this ruling.

Plaintiff proposed to ask:—

2. Did you not know, when you purchased a one-third interest in that lease, that you thereby assumed to perform the covenants to be done, kept and performed by the original lessee, so long as you held such interest ?

3. Where he, Moore, got the money from with which he made the advancement of $10,000 ?

Both offers were rejected, and several bills of exception sealed.

Moore testified that in March 1867, he gave a power of attorney to Oscar F. Moore to act for him at the colliery; and afterwards left him in charge of it, to look after his interest; his brother was to do for him whatever he thought necessary for the good of the colliery. Defendant had the books of the colliery, and left them with Marsh; he was carrying on then no business in Pennsylvania; he resided in Washington.

G. W. Pomeroy testified that he sold oil to John Bracken in August and September, and to John Bracken & Co. in October 1867. W. D. Moore paid him for a bill of oil in the fall of 1867.

4, 5. Plaintiff offered to prove the time the oil was sold to J. H. Bracken & Co.; also, what Oscar F. Moore said as to W. D. Moore's interest in the colliery, on occasions when witness was negotiating with Oscar about the oil.

The offers were rejected by the court, and bills of exceptions sealed.

6. Plaintiff offered drafts drawn by J. H. Bracken on J. H. Bracken & Co., in Philadelphia, given to plaintiff for goods furnished upon orders in September and October 1867, and accepted in handwriting of Oscar F. Moore.

The offer was rejected, and a bill of exceptions sealed.

7. Plaintiff called James Russell and proposed to prove by him, that after the assignment of the whole interest, Bracken continued to manage the business as before.

The offer was rejected, and a bill of exceptions sealed.

8. The plaintiff offered seven orders or assignments on which the

[Thomas *v.* Moore.]

suit was brought, dated in September and October 1867. They were all of similar kind; the first was as follows:—

"No. 30.—For a valuable consideration, I do hereby transfer assign unto H. R. & G. W. Heebner, or order, the sum of six ($6) dollars and —— cents, it being the amount of wages due me for work done for J. H. Bracken in the month of September 1867, and authorize them to recover and receive the same for their own use.

Witness my hand the 6th day of September 1867.

(Signed)

Witness to signature,
  (Signed)  CHAS. MARSH.

                    his
JOHN ⋈ THOMAS.
              mark."

The offer was rejected, and a bill of exceptions sealed.

The plaintiff having closed, the court directed the jury to find a verdict for defendant; and the jury so found.

The plaintiff took out a writ of error and assigned for error:—

1–7. The rejecting the offers of evidence as contained in the several bills of exception of the same numbers respectively as the specifications.

·9. That the court erred in not submitting the fact as to whether or not the colliery was carried on jointly by Bracken and William D. Moore to the jury, and directing a verdict for the defendant.

*F. G. Farquhar* and *F. W. Hughes* (with whom was *L. Bartholomew,*) for plaintiff in error.—However slight the evidence, every question of fact, if pertinent, must be left to the jury: Dougherty *v.* Stephenson, 8 Harris 210; McIldowny *v.* Williams, 4 Casey 492; Strohl *v.* Levan, 3 Wright 177.

*J. W. Ryon* and *B. W. Cummings,* for defendant in error.—The doctrine of a scintilla evidence being submitted to the jury is exploded: Howard Express Co. *v.* Wile, 14 P. F. Smith 201. Partners are not the same as part owners of goods: Story on Part., § 211.

The opinion of the court was delivered, March 13th 1872, by

THOMPSON, C. J.—1. The ruling of the learned judge as presented by the first bill of exceptions and first assignment of error, was all right. The plaintiff claimed against the defendants as partners. This was not to be established by showing fraud and concealment as between them, but by such evidence only as should tend to show a community of interest in the business carried on ostensibly, or, if not, impliedly, by sharing in the profits and losses. Whether the partners were fair or fraudulent in their intentions and acts, it matters not to the plaintiff, unless he could show this as the state of the facts. The court discriminated properly as to what part

[Thomas *v.* Moore.]

of this offer was admissible and what should be rejected. This error is not sustained.

2 and 3. The ruling upon the second bill of exceptions, like the first, was all right. It mattered not what the defendant Moore's knowledge of his rights under the assigned lease were as to his landlords. Whatever might have been his knowledge on that subject, it did not make him a partner, unless the lease, together with his acts under it, made him so. Neither this nor the third exception is sustained.

4 and 5. These assignments of error on their face make no case against the ruling of the court after the offer of testimony. Like counts in a *narr.* they should be self-sustaining—should in themselves primâ facie disclose a case of error. This they do not do. In what was the plaintiff injured by the rejection of evidence as to the precise date of a transaction, not connected with the matters in controversy, but to show facts from which it might possibly be inferred that the defendants were partners and had been for months before. Buying goods and materials jointly during the alleged period of the partnership, was some evidence of the fact. The precise date was of no consequence. Indeed, all that was material on the point embraced by the proposed testimony was actually admitted, and was before the jury. What the declarations of Oscar F. Moore were, that were refused by the court, does not appear in the bill of exceptions. How can we say there is error in what does not appear? The proposed declarations should have been spread on the face of the exception. These errors are not sustained.

6. We think the orders drawn by J. H. Bracken, on J. H. Bracken & Co. in Philadelphia, and accepted by Oscar F. Moore, and the goods furnished thereon in accordance with the acceptance, were evidence on the question of partnership. Oscar F. Moore was William D. Moore's agent and attorney in fact in Pennsylvania, as testified to by the latter, and took charge of the interests of the latter about the colliery and at Philadelphia, from and after the assignment to him (William D. Moore) in February 1867. It was also in evidence that William D. Moore lived in Washington City, and had no other known interests in this Commonwealth, excepting in the Charter Oak Colliery. Now whatever the agent did within the scope of his authority was in law the act of his principal, and if the effect was to establish a partnership, it was evidence. This exception is sustained.

7. The seventh offer was properly rejected in the state of the facts of the case trying.

8. It will be apparent when we come to speak of the 9th and 10th assignments of error, that the learned court erred in rejecting this offer. It consisted of a number of assignments by the legal plaintiff to Heebner & Brother. The validity of the claims assigned was not in dispute. The only question being whether Bracken &

[Thomas *v.* Moore.]

Moore, as partners, were liable for them, or J. H. Bracken individually.   In our view of the case they should have been admitted and submitted to the jury upon the question of partnership.

9 and 10. We think these errors are sustained.   It seems to us there was evidence, not a *scintilla* merely, but of substance, in the cause of a partnership between Bracken & Moore from and after the assignment of the one-third interest in the colliery in February 1867, together with the one-third of the personal property necessary to the operation of the colliery, until the purchase of the whole by Moore.   Certainly the most reasonable inference as regards the personal property would be, that it was bought to be used in connection with the colliery for the benefit of the purchaser of an interest in title.   It was so used, and an agent was appointed to see to the interests of its owner; and it was of course used in connection with the owner of the remaining two-thirds interest.   Without any explanation of this, the inference would arise that there was a partnership.   It would be a natural presumption certainly, and we think a legal presumption as well.   Then there was evidence of negotiations and declarations about rolls for the colliery by Moore, and about the purchase and payment for oil, by the attorney in fact of the latter.   The appointment of an agent by Moore to take charge of his interests about the colliery, and proof to the effect that he had no other interests in Pennsylvania, and the draft of orders by J. H. Bracken on J. H. Bracken & Co. in Philadelphia; all these were circumstances proper to be submitted to the jury on the question of partnership, but were withheld as altogether insufficient to raise a legal inference of partnership.   The learned judge mistook his province in so holding and directing a verdict for defendants.   The jury should have been called upon in face of all the evidence in the case, to say how that was.

For these reasons the judgment is reversed, and *venire de novo* awarded.